**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                          Case No.:   3:09-cr-209-MMH-MCR

SYLVESTER GILLON

_____/

## ORDER

Defendant Sylvester Gillon moves to reduce his sentence under Section 404 of the First Step Act (Doc. 164, "First Step Act Motion") and to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A) (Doc. 177, "Motion for Compassionate Release"). The government has responded in opposition to both motions. (Doc. 173, Response to First Step Act Motion; Doc. 180, Response to Motion for Compassionate Release).

Gillon is a 52-year-old inmate incarcerated at Miami FCI, serving a 30-month term of imprisonment for violating the conditions of supervised release. (Doc. 160, Judgment of Revocation) ("revocation sentence"). Before the violation, Gillon had been serving a term of supervised release for a 1997 conviction for conspiracy to possess with intent to distribute five kilograms or more of powder cocaine and 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and money laundering. (Doc. 165, First Step Act Memorandum at ECF pp. 1–2; see also United States v. Gillon, No. 6:97-cr-

1

155-PFC-3 (M.D. Fla.)). Gillon's term of supervised release was revoked because he engaged in new criminal conduct: dealing in crack cocaine. Thus, in addition to the 30-month revocation sentence, Gillon is serving a consecutive term of 190 months in prison in Case Number 3:09-cr-133-MMH-MCR for distributing 50 grams or more of cocaine base. (Case No. 3:09-cr-133-MMH-MCR, Dkt. Entry 37, Judgment; Dkt. Entry 57, Order Reducing Sentence).[1] According to the Bureau of Prisons (BOP), Gillon is scheduled to be released from prison on January 24, 2025. The motions are due to be denied for the reasons below.

I.   **First Step Act Motion (Doc. 164)**

Gillon moves to reduce his 30-month revocation sentence pursuant to Section 404 of the First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194. See First Step Act Motion (Doc. 164). He also requests a hearing at which he can present evidence of his post-sentence rehabilitation and health conditions. In response, the government concedes that the offense underlying the revocation sentence – the 1997 conspiracy to possess with intent to distribute five kilograms or more of powder cocaine and 50 grams or more of crack cocaine – is a "covered offense." Response to First Step Act Motion at 1. However, the government argues that the predicate conspiracy remains punishable under 21

---

[1]   In 2019, Gillon moved under the First Step Act to reduce his 190-month term of imprisonment in Case Number 3:09-cr-133-MMH-MCR. The Court denied that motion on June 17, 2021, and the Eleventh Circuit Court of Appeals affirmed. United States v. Gillon, No. 21–12298, 2022 WL 681218 (11th Cir. Mar. 8, 2022).

2

U.S.C. § 841(b)(1)(A) based on the stipulated amount of powder cocaine, and thus remains a Class A felony, such that Gillon's 30-month revocation sentence remains well below the statutory 5-year maximum penalty. Id. The government urges the Court to deny a sentence reduction for discretionary reasons, including "Gillon's criminal history, the extensive nature of the conspiracy, and breach of this Court's trust." Id.

Years after Gillon was sentenced for the underlying conspiracy (and shortly after the Judgment of Revocation was entered), Congress amended the penalties for crack cocaine offenses by increasing the amount of crack cocaine necessary to trigger enhanced penalties under 21 U.S.C. §§ 841(b)(1)(A)(iii) and (b)(1)(B)(iii). See Fair Sentencing Act of 2010, Pub. L. No. 111–220, 124 Stat. 2372, § 2. At first, however, those changes did not apply to anyone who was sentenced before August 3, 2010. See Dorsey v. United States, 567 U.S. 260, 264 (2012). But then came the First Step Act, which makes the Fair Sentencing Act's "changes retroactive and gives certain crack offenders an opportunity to receive a reduced sentence." Terry v. United States, 141 S. Ct. 1858, 1860 (2021). The First Step Act authorizes a district court "that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act … were in effect at the time the covered offense was committed." First Step Act, § 404(b). A "covered offense" means "a violation of a Federal criminal statute, the statutory penalties for which were modified by

3

section 2 or 3 of the Fair Sentencing Act … that was committed before August 3, 2010." Id., § 404(a). The Supreme Court and the Eleventh Circuit have clarified that a "covered offense" refers only to a crack-cocaine offense for which 21 U.S.C. §§ 841(b)(1)(A)(iii) or (b)(1)(B)(iii) provided the penalties. Terry, 141 S. Ct. at 1864; United States v. Jones, 962 F.3d 1290, 1300 (11th Cir. 2020). Notably, however, relief under the First Step Act is discretionary because "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act, § 404(c).

Gillon's 30-month revocation sentence is eligible for modification under § 404(b). "[A] sentence imposed upon revocation of supervised release is eligible for a sentence reduction under § 404(b) of the First Step Act when the underlying crime is a covered offense within the meaning of the Act." United States v. Gonzalez, 9 F.4th 1327, 1331 (11th Cir. 2021) (citations omitted). Gillon's underlying multidrug conspiracy, which involved both 50 grams or more of crack cocaine and five kilograms or more of powder cocaine, is a "covered offense." United States v. Taylor, 982 F.3d 1295, 1301 (11th Cir. 2020).

In the exercise of its discretion, the Court declines to reduce the sentence. As the government points out, the underlying conspiracy remains punishable under § 841(b)(1)(A) because Gillon pled guilty to conspiring to possess with intent to distribute five kilograms or more of powder cocaine. See Response to First Step Act Motion at 1; see also First Step Act Memorandum (Doc. 165) at

4

ECF p. 2. Thus, the offense remains a Class A felony, for which the maximum penalty for violating the conditions of supervised release is five years. 18 U.S.C. § 3583(e)(3). Gillon's 30-month revocation sentence remains well below that maximum. Additionally, the applicable § 3553(a) factors weigh against reducing the 30-month revocation sentence for the reasons the Court articulated not long ago in a related case. In June 2021, the Court denied Gillon a sentence reduction in Case Number 3:09-cr-133-MMH-MCR because the § 3553(a) factors did not support the request. (Case No. 3:09-cr-133-MMH-MCR, Dkt. Entry 91). Although that discussion concerned Gillon's 190-month term of imprisonment in that case, the following portion remains relevant here:

> … Gillon has a substantial criminal history, which earned him the career offender enhancement under U.S.S.G. § 4B1.1. (PSR at ¶ 27). Gillon's criminal record includes a prior federal conviction for money-laundering and conspiracy to possess with intent to distribute more than 50 kilograms of cocaine and at least 50 grams of cocaine base, of which Gillon was an organizer (id. at ¶ 47), as well as a prior Florida conviction for the unlawful sale or delivery of cocaine (id. at ¶ 48). A federal judge sentenced Gillon to a term of 140 months in prison for the prior federal offense, but that did not deter Gillon from committing another federal drug crime only three and a half years after he was released from prison. (See id. at ¶ 47). Compounding matters, Gillon committed the instant offense despite being on supervised release for the prior federal conviction. (See id. at ¶¶ 47, 50). Indeed, Gillon has a pattern of violating the terms of probationary sentences. (See id. at ¶¶ 41, 44).

Id. at 3–4. The Court commends Gillon for maintaining good behavior while in prison (as all inmates are expected to do), but the Court remains persuaded that a consecutive term of 30 months in prison for violating the conditions of supervised release is warranted in view of the applicable § 3553(a) factors.

5

Reducing Gillon's sentence would fail to accomplish the statutory goals of sentencing upon revocation of supervised release, including the need to consider the history and characteristics of the defendant and to afford adequate deterrence. See 18 U.S.C. §§ 3583(e), 3553(a)(1), 3553(a)(2)(B). Thus, the First Step Act Motion (Doc. 164) is due to be denied. The Court finds that a hearing on the motion is neither required nor warranted. See United States v. Denson, 963 F.3d 1080, 1086–87 (11th Cir. 2020).

**II.     Motion for Compassionate Release (Doc. 177)**

Gillon moves for compassionate release because he contends that he is at heightened risk of severe illness should he contract COVID-19 and that his facility cannot provide adequate medical care. Motion for Compassionate Release at 2–3. Gillon states that he has several underlying medical conditions that make him vulnerable to COVID-19, those being sickle-cell anemia trait, type 2 diabetes, hyperlipidemia, hypertension, and stage 3 chronic kidney disease. Id. at 3. He also states that vaccination may not protect against newer strains of COVID-19, id., and that BOP staff regularly fail to wear masks or other protective equipment, id. at 5. The United States opposes the Motion for Compassionate Release, arguing that Gillon has failed to establish "extraordinary and compelling reasons" for a sentence reduction, that he poses a danger of reoffending, and that the sentencing factors under 18 U.S.C. §

3553(a) weigh against reducing his sentence. See generally Response to Motion for Compassionate Release.

A movant under § 3582(c)(1)(A) bears the burden of proving that a sentence reduction is warranted. United States v. Kannell, 834 F. App'x 566, 567 (11th Cir. 2021) (citing United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014)). The statute provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). The Eleventh Circuit instructs that U.S.S.G. § 1B1.13 is the applicable policy statement for all § 3582(c)(1)(A) motions, and that "a district court cannot grant a motion for reduction if it would be inconsistent with the [Sentencing] Commission's policy statement defining 'extraordinary and compelling reasons.'" United States v. Bryant, 996 F.3d 1243, 1247, 1249 (11th Cir.), cert. denied, 142 S. Ct. 583 (2021); see also U.S.S.G. § 1B1.13, cmt. 1 (defining "extraordinary and compelling reasons").[2]

---

[2] Application Notes 1(A) through 1(C) provide that a terminal illness or a serious medical condition, old age, and certain family circumstances qualify as extraordinary and compelling reasons. Application Note 1(D) provides that extraordinary and compelling reasons exist if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." "Application Note 1(D) does not grant discretion to

7

Notably, "[b]ecause the statute speaks permissively and says that the district court 'may' reduce a defendant's sentence after certain findings and considerations, the court's decision is a discretionary one." United States v. Harris, 989 F.3d 908, 911 (11th Cir. 2021). And as the Third Circuit has observed, COVID-19 cannot independently justify compassionate release, "especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

"[B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are 'extraordinary and compelling reasons' for doing so, and … (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement." United States v. Tinker, 14 F.4th 1234, 1237 (11th Cir. 2021). However, "nothing on the face of 18 U.S.C. § 3582(c)(1)(A) requires a court to conduct the compassionate release analysis in any particular order." Id. "Because all three conditions – i.e., support in the § 3553(a) factors, extraordinary and compelling reasons, and adherence to § 1B1.13's policy statement – are necessary, the absence of even one would foreclose a sentence reduction." Id. at 1238.

---

courts to develop 'other reasons' that might justify a reduction in a defendant's sentence." Bryant, 996 F.3d at 1248.

Gillon has not shown extraordinary and compelling reasons warranting compassionate release. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13 & cmt. 1. The Court recognizes that, according to the Centers for Disease Control (CDC), some of Gillon's underlying conditions can increase the risk of severe illness from COVID-19.[3] Those conditions are type 2 diabetes, chronic kidney disease, and hypertension. However, sickle-cell <u>trait</u> (SCT) (as opposed to sickle-cell <u>disease</u> (SCD))[4] and hyperlipidemia are not among the conditions that the CDC associates with increased risk of developing complications from COVID-19. That said, the combination of Gillon's health conditions and the COVID-19 pandemic does not provide "extraordinary and compelling reasons" for a sentence reduction. The medical records reflect that Gillon had a "confirmed case" of COVID-19 on or around February 1, 2021, but he was asymptomatic and apparently recovered without complication. (Doc. 177-1, BOP Records at 54).

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[4] Sickle cell <u>trait</u> differs from sickle cell <u>disease</u> in that people who have sickle cell trait inherit one sickle cell gene and one normal gene, whereas people with sickle cell <u>disease</u> have inherited one sickle cell gene plus an abnormal gene. What is Sickle Cell Disease?, CDC, available at https://www.cdc.gov/ncbddd/sicklecell/facts.html. "People with SCT usually do not have any of the signs of the disease and live a normal life, but they can pass the trait on to their children." <u>Id.</u> Rarely, people with SCT may develop certain complications, but these typically occur under unusual circumstances, such as increased atmospheric pressure (as when scuba diving), low oxygen levels in the air, dehydration, and high altitudes, but more research is needed. What is Sickle Cell Trait?, CDC, available at https://www.cdc.gov/ncbddd/sicklecell/traits.html.

9

Moreover, Gillon (wisely) accepted two doses of the COVID-19 vaccine on March 10, 2021, and April 1, 2021. Response to Motion for Compassionate Release at 5. Although Gillon has not received a booster shot, the government advises that on April 25, 2022, a BOP representative informed the prosecutor's office "that all institutions have been providing the booster upon request from the inmates and that they are readily available." Id. at 5–6. According to the available data, the COVID-19 vaccines are effective at preventing death or serious illness from COVID-19, including against emerging variants.[5] Recent data also suggests that "hybrid immunity" – a combination of natural immunity following recovery from a COVID-19 infection plus immunity from a vaccine – provides especially robust protection.[6] As the Seventh Circuit observed:

> Section 3582(c)(1)(A) was enacted and amended before the SARS-CoV-2 pandemic, and it will continue to serve a beneficent function long after the pandemic ends. But for the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer relief far more effective than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021). Thus, "prisoners who have access to a vaccine cannot use the risk of COVID-19 to obtain

---

[5]   https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html.

[6]   https://www.nbcnews.com/health/health-news/hybrid-immunity-people-covid-still-get-vaccinated-rcna1974.

10

compassionate release." United States v. Ugbah, 4 F.4th 595, 597 (7th Cir. 2021); see also United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("[A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction."). Because Gillon is vaccinated against COVID-19 (if he does not have hybrid immunity as well), and because he has access to a booster shot, the pandemic is not an appropriate basis for finding "extraordinary and compelling reasons."[7]

Nor do Gillon's conditions qualify as "extraordinary and compelling reasons" on their own. The medical records show that Gillon's conditions are being monitored or managed by medication, contrary to his assertion that his facility cannot provide adequate medical care. See BOP Records (Doc. 177-1) at 11–78. Gillon takes glipizide and metformin for diabetes, lisinopril for hypertension, and atorvastatin for cholesterol, id. at 25, 30–31, 49, and he undergoes periodic blood work to assess his kidney function, see id. at 13, 68–69. There is no indication that Gillon's conditions "substantially diminish[] the ability of the defendant to provide self-care within the environment of a

---

[7] The emergence of the omicron variant of COVID-19, which can somewhat evade vaccine immunity, does not change this conclusion. According to the available data, vaccination still offers protection against serious illness, hospitalization, and death from several variants of coronavirus, including the omicron variant, even if vaccination does not prevent infection altogether. COVID-19 vaccines induce immune response to Omicron, National Institutes of Health (NIH), Feb. 15, 2022, available at https://www.nih.gov/news-events/nih-research-matters/covid-19-vaccines-induce-immune-response-omicron.

11

correctional facility." U.S.S.G. § 1B1.13, cmt. 1(A)(ii).

In any event, the § 3553(a) factors do not support a reduction in sentence for the reasons the Court articulated with respect to Gillon's First Step Act Motion. Ante, pp. 4–6. Gillon contends that his age (52) and his record of good behavior in prison suggest he presents a low risk of reoffending. But given Gillon's pattern of committing drug offenses, including while on probation or supervised release, the Court is not persuaded that these considerations justify shortening his sentence. In view of all the § 3553(a) factors, reducing Gillon's prison sentence is not warranted at this time.

Accordingly, it is hereby **ORDERED:**

1. Defendant Sylvester Gillon's "Motion for Sentence Reduction of Revocation Under Fair Sentence Act" pursuant to Section 404 of the First Step Act (Doc. 164) is **DENIED**.

2. Gillon's Motion for a Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A) (Doc. 177) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida this 7th day of June, 2022.

MARCIA MORALES HOWARD
United States District Judge

12

lc 19
Copies:
Counsel and parties of record

13